**In re Donna L. ULINO, Debtor.**

**Bankruptcy No. 95–7857–9P7.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Dec. 1, 1995.

Kevin Burke, Cape Coral, FL, for Debtor.

Diane L. Jensen, Trustee, Ft. Myers, FL.

## ORDER ON OBJECTION
## TO EXEMPTIONS

ALEXANDER L. PASKAY, Chief Judge.

IN THIS Chapter 7 liquidation case, Donna L. Ulino (Debtor) claimed as exempt certain personal properties including a 1989 Ford Mustang. Diane L. Jensen (Trustee), the Trustee in charge of the administration of the estate, timely challenged the Debtor's claim of exemptions. The Trustee's objection is twofold. First, the Trustee contends that the aggregate value of the personal properties claimed as exempt exceeds the maximum allowed by Article X, § 4(2) of the Florida Constitution which places a cap on personal property of $1,000.00. Second, the Trustee objects to the claim of exemption concerning the 1989 Ford Mustang, contending her claim also exceeds the cap fixed on the exemption by Fla.Stat. 222.25, which is $1,000.00. The Debtor in her response, while admits that her personal property exemption claim exceeds the maximum of $1,000.00, contends that the excess is only $80.00. And concerning the claim of exemption of the Ford Mustang, while admits again that it is more than is permitted by law, exceeds the Statutory cap only by $701.14, not the amount claimed by the Trustee. Concerning the alleged excess exemption represented by the monies on deposit in the bank, the Debtor contends that the true balance in her bank account on the date of the commencement of this case was only $7.77 rather than $25 stated on her Schedule C. Accordingly, it is the Debtor's contention that her claim of exemptions exceeds the maximum allowable only by $781.14, the amount she is willing to pay to the Trustee in redemption of the excess.

The real controversy centers around the valuation of the 1989 Ford Mustang. Both the Trustee and the Debtor presented expert testimony, one relying on the well-known periodic publication by the National Automobile Dealers Association (NADA) and the other on the so-called Black Book, a publication of the National Auto Research Division, Hearst Business Media Corp. The expert who relied on the Black Book, after deducting the costs of repairs which according to the expert were needed to put the car in shape, valued the Ford Mustang at $2,000 using trade-in value. The Trustee's expert using the NADA book valued the Ford Mustang using wholesale valuation at $4,500.00 and using retail valuation at $5,700.00. The expert who deals with used automobiles stated that he is willing to pay $3,500 for the automobile as is and expected to resell it for at least $4,200 to $4,500.

The wide difference between the two values opined by the experts is due largely to the different bases used by each, i.e. trade-in versus wholesale or retail value. Disputes concerning valuations usually came up in the past in connection with proceeding for the purpose of determining the amount of allowable secured claim pursuant to § 506(a) of the Bankruptcy Code. The Courts interpreting this Section have placed varying importance on two clauses of the Section. One line of cases concluded that the clear language of the Section in the first sentence is determinative. This sentence provides that the creditor's claim is secured to the extent of the value of the creditor's interest in the estate's interest in the property involved. *In re*

*Mitchell,* 954 F.2d 557 (9th Cir.) cert. denied 506 U.S. 908, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992); *In re Overholt,* 125 B.R. 202 (S.D.Ohio 1990). The proponent of this approach contend that the right of the secured creditor is nothing more than to take possession of the collateral upon default and the value of the secured claim is equal to the amount the creditor could receive upon the resale of the collateral, i.e. the wholesale value of the collateral.

The second approach focused on the second sentence of the Section which provides that the interest of the secured creditor must be valued in light of the purpose of the valuation and the proposed disposition or use of the collateral. *In re Rash,* 31 F.3d 325 (5th Cir.1994); *In re Green,* 151 B.R. 501 (Bankr.D.Minn.1993). Under this approach where the Debtor intends to retain and use the collateral the value of the creditor's secured interest should be the cost to replace the collateral that is the retail value. The issue was considered recently by the Eighth Circuit in the case of *In re Trimble,* 50 F.3d 530 (8th Cir.1995). The Court in *Trimble* voiced its approval of the approach of the Fifth Circuit in *Rash, supra.* The court in *Trimble* reasoned that only the *Rash* approach gives full effect to the entire language of § 506(a). Based on the foregoing, the Court concluded that the proper basis to be used when valuing the interest of a secured creditor when the debtor intends to retain and use the collateral is the retail value of the collateral without any deduction for cost of repossession or sale.

The question still remains, however, whether the holdings of *Rash* and *Trimble* should be limited to valuation of encumbered assets of the debtor's estate pursuant to § 506(a) and for the purpose of determining the amount of the allowable secured claim or should also be used for the purpose of determining the value of a property claimed as exempt. At first blush one might conclude the difference requires a different result and the proper basis for valuation in the present instance should be the wholesale value of the automobile. A closer analysis of the issue leaves no doubt that distinction is really without difference. This is so because in the present instance the Debtor just as the debtors in *Trimble* and *Rash* intends to retain and use the collateral. Thus, the value of the Ford Mustang as far as the Debtor is concerned is the value of the right of the continuing use of the collateral. This value, in turn, must be measured by the costs of replacement, i.e. the retail value because if the right of continuing use is lost the debtor will have to replace the car if she desires to have the same age and type paying retail and not the wholesale value for the replacement.

Based on the foregoing, this Court is satisfied that the value of the Ford Mustang is the NADA book's retail, that is $5,700.00, minus the cost of repairs $1,390.00 (Debtor's Exhibit No. 1) or $4,310.00. Accordingly, the Trustee's Objection to the claim of exemptions concerning the Ford Mustang is sustained and the exemption concerning same is limited to the value of $1,000.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Debtor either redeems the car by paying the excess of $3,310.00 within thirty (30) days from the date of entry of this Order and in the event she fails to do so the Trustee is authorized to take possession of the Ford Mustang and sell the same pursuant to § 363(f) of the Bankruptcy Code and pay the Debtor the amount of the allowed exemption, the sum of $1,000. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's claim of exemption as to other personal property, the claim of exemption is limited to the sum of $1,000 and the Debtor shall pay the excess to the Trustee within thirty (30) days from the date of this Order unless the Trustee consents to a repayment schedule.

DONE AND ORDERED.